# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**ROBERT MOSS,**
**Claimant Below, Petitioner**

**FILED**

November 6, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0721** (BOR Appeal No. 2053913)
(Claim No. 2017020079)

**BLACKHAWK MINING, LLC,**
**Employer Below, Respondent**

# MEMORANDUM DECISION

Petitioner Robert Moss, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Blackhawk Mining, LLC, by Counsel Billy R. Shelton, filed a timely response.

The issues on appeal are additional compensable conditions and temporary total disability benefits. The claims administrator closed the claim for temporary total disability benefits on December 15, 2017. On August 29, 2018, it denied the addition of cervical sprain and C7 radiculopathy to the claim. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decisions in its February 4, 2019, Order. The Order was affirmed by the Board of Review on July 19, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Moss, a coal miner, was injured in the course of his employment when he was struck by a rock on February 7, 2017. The Employees' and Physicians' Report of Injury indicates he injured his head, neck, and shoulders. The physician's section listed the conditions as headache, concussion, acute right shoulder pain, and right shoulder contusion. The claimant was treated at Charleston Area Medical Center Emergency Department on February 8, 2017, for headaches, blurry vision, nausea, and right shoulder pain after a rock struck him at work the day before. He

1

was diagnosed with headache and shoulder contusion. The claim was held compensable for concussion and right shoulder contusion on February 20, 2017.

Mr. Moss has a history of right upper extremity and cervical spine issues. On May 26, 2009, cervical x-rays were performed and showed mild spondylosis. A cervical MRI was performed on November 16, 2010, for cervical strain, neck pain, a head injury, and bilateral hand and arm numbness. The MRI showed cervical lymphadenopathy, facet arthropathy, uncovertebral joint proliferation, and disc protrusions throughout the cervical spine with stenosis.

Mr. Moss was treated by Rajesh Patel, M.D., on January 20, 2012, for neck and right arm pain that had been present for a year. Mr. Moss reported numbness and tingling in his neck, right arm, and fingers. Dr. Patel reviewed the MRI and opined that it showed disc bulges from C5-T1 with nerve root impingement and multilevel spondylosis. Dr. Patel diagnosed cervical spondylosis, cervical disc herniation, cervical radiculopathy, and cervical degenerative disc disease.

On September 12, 2013, Mr. Moss sought treatment from Brett Whitfield, M.D., for numbness and tingling in the arms and fingers. Dr. Whitfield diagnosed cervical disc herniations at C6-7 and C5-T1 and cervical radiculopathy. He opined that Mr. Moss's symptoms were resulting from the cervical spine. A cervical MRI was performed on December 7, 2013, and showed multilevel degenerative disc disease without herniation, mild osteoarthritic cervical vertebral body lipping, and loss of cervical lordosis.

Andrew Thymius, M.D., treated Mr. Moss on January 9, 2014, for pain management due to cervical radiculitis, cervical disc herniation, lumbar facet arthropathy, and lumbar degenerative disc disease. Mr. Moss underwent epidural steroid injections. On May 27, 2014, Mr. Moss returned to Dr. Whitfield for right shoulder and neck issues. It was noted that he had a C7-T1 disc herniation. Mr. Moss reported pain in his right arm. Dr. Whitfield diagnosed right shoulder pain versus cervical radiculopathy, disc herniations at C6-7 and C7-T1, and mild right shoulder impairment. Dr. Whitfield opined that Mr. Moss's forearm pain and numbness were coming from his neck. He administered a right shoulder injection, which had no impact on the symptoms.

A July 1, 2014, cervical MRI showed neuroforaminal stenosis and disc bulges at C5-6, C6-7, C7-T1, and T1-T2. 2015 and 2016 treatment notes by Angela Presley, NP, indicate Mr. Moss was seen for cervical spondylosis, cervicalgia, daily headaches, back ache, joint pain, thoracic pain, and lumbago. He was noted to have numbness. Ms. Presley recommended cervical injections, which Mr. Moss underwent. Lumbar x-rays showed disc space narrowing and degenerative changes on June 21, 2016.

A June 20, 2017, treatment note from Beaver Family Clinic indicates Mr. Moss reported a work-related injury that occurred in February. He stated that he had right shoulder pain as well as numbness, tingling, and throbbing in his right hand. Mr. Ross reported no previous shoulder injury and a history of cervicalgia, thoracic spine pain, lumbago, cervical spondylosis, and joint pain.

Mr. Ross returned to Dr. Whitfield on June 29, 2017, and reported ongoing neck and right shoulder pain with right forearm and hand numbness. Dr. Whitfield diagnosed right shoulder

rotator cuff contusion and cervical compression injury with possible right radiculopathy. Dr. Whitfield opined that a compression injury, such as Mr. Ross sustained, can exacerbate preexisting arthritic or degenerative conditions. He stated that Mr. Ross had experienced an exacerbation of his symptoms and recommended physical therapy. A cervical MRI was performed on August 15, 2017, and showed mild early degenerative disc disease and mild foraminal encroachment at C7-T1. A right shoulder MRI showed partial thickness tearing and tendinosis.

On August 17, 2017, Dr. Whitfield noted that Mr. Moss's symptoms had worsened. He stated that the MRI showed mild disc bulging at C7-T1. Dr. Whitfield diagnosed C7-T1 disc bulge with mild foraminal impingement causing right-sided radiculitis. On September 1, 2017, Mr. Moss underwent an EMG which showed minor evidence of right C7 radiculopathy, mild left median mononeuropathy at the wrist, and right ulnar neuropathy at the elbow. Mr. Moss returned to Dr. Whitfield on September 12, 2017. Dr. Whitfield indicated he reviewed the EMG. He diagnosed C7 radiculitis, post-concussive headaches, right mild carpal tunnel syndrome, and mild right ulnar neuropathy. He opined that the arm pain resulted from the C7 herniated disc. Dr. Whitfield stated that Mr. Moss was unable to work through October 2, 2017.

In a September 18, 2017, treatment note, Dr. Patel stated that Mr. Moss had numbness and weakness in his right arm/hands/fingers and some in the left. Dr. Patel reviewed the cervical MRI and diagnosed cervical sprain, disc protrusions at C6-7 and C7-T1, neural foraminal narrowing, right C7 and T1 radiculopathy, right rotator cuff syndrome, rotator cuff sprain, and right shoulder microtrabecular tear. Dr. Whitfield stated that Mr. Moss should avoid cervical surgery and recommended physical therapy and injections, which the claims administrator authorized on September 21, 2017.

Dr. Patel stated in an October 17, 2017, work excuse that Mr. Moss was unable to work from October 30, 2017, through November 8, 2017. On October 17, 2017, Dr. Whitfield discontinued all right shoulder treatment until Mr. Moss's cervical issues could be fully addressed. Mr. Moss was treated by Dr. Thymius on November 1, 2017. Dr. Thymius diagnosed cervical disc displacement and cervical radiculopathy. He recommended epidural injections.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on November 8, 2017, in which he noted that Mr. Moss was not working and complained of increased neck pain and bilateral hand numbness in the previous few weeks. Dr. Mukkamala opined that this indicated the symptoms were not related to his occupational activities. Dr. Mukkamala diagnosed right shoulder contusion and concussion. He stated that Mr. Moss did not report neck pain immediately following the compensable injury. Dr. Mukkamala opined that any radiculopathy or cervical symptoms resulted from preexisting issues and were not related to the compensable injury. Dr. Mukkamala stated that Mr. Moss required no further treatment and could return to work without restrictions. Dr. Mukkamala found that Dr. Whitfield took Mr. Moss off of work four months after the compensable injury occurred and that he was taken off of work for no valid reason.

In a November 27, 2017, treatment note, Dr. Patel stated that physical therapy and injections were helping Mr. Moss's neck, shoulder, and arm symptoms. Dr. Patel stated that he should undergo injections, which were denied. He reviewed the EMG and stated that it showed

active radiculopathy. He noted that Mr. Moss did not have right-sided pain prior to the compensable injury. Dr. Patel opined that the cervical conditions should be compensable.

On November 28, 2017, Dr. Whitfield stated that Mr. Moss's symptoms were largely due to C7 radiculopathy. Dr. Whitfield opined that he needed to be treated by Dr. Patel. He stated that Mr. Moss was unable to work from November 27, 2017, through February 28, 2018. The claims administrator closed the claim for temporary total disability benefits on December 15, 2017.

Mr. Moss testified in a February 1, 2018, deposition that he was struck by a rock on the day he was injured. The rock was two inches thick, three feet long, and two feet wide. It fell five to six feet and struck his head and right shoulder. Mr. Moss testified that he continued to work for a few months until his treating physicians took him off of work because his symptoms increased with movement. He admitted that he had preexisting neck and upper extremity symptoms, but he denied any numbness before the compensable injury. Mr. Moss also testified that his current symptoms differ from his pre-compensable injury symptoms.

A cervical MRI was performed on February 23, 2018, and showed disc protrusions at C5-6, C6-7, and C7-T1 as well as mild spinal canal stenosis and neural foraminal narrowing. In a May 21, 2018, letter, Dr. Patel opined that Mr. Moss had not reached maximum medical improvement. He noted that prior to the compensable injury, Mr. Moss underwent an EMG which showed C8 and T1 radiculopathy but no C7 radiculopathy. Dr. Patel stated that he evaluated Mr. Moss two and a half years prior to the compensable injury, and they discussed possible cervical surgery, which was never performed. Dr. Patel opined that at his preinjury evaluation, Mr. Moss had no C7 radiculopathy. Following the compensable injury, he developed C7 radiculopathy. Dr. Patel noted that when he saw Mr. Moss in 2014, he was able to work. Following the compensable injury, Mr. Moss had difficulty working and then had to stop. Therefore, Dr. Patel opined that the condition is the result of the work injury. Lastly, Dr. Patel stated that Mr. Moss was temporarily and totally disabled from the time he stopped working through the present. Dr. Patel completed a diagnosis update on May 23, 2018, requesting the addition of cervical sprain and right C7 radiculitis to the claim.

In a June 22, 2018, supplemental report, Dr. Mukkamala disagreed with Dr. Patel's opinion. He stated that Mr. Moss had preexisting cervical spondylosis, disc herniation, radiculopathy, and degenerative disc disease. Further, he continued to work after the compensable injury occurred. Dr. Mukkamala found that Dr. Whitfield stated Mr. Moss had pain, numbness, and tingling in his right upper extremity prior to the compensable injury and that he was diagnosed with right shoulder pain versus cervical radiculopathy, cervical disc herniation at C6-7 and C7-T1, and mild right shoulder impingement. Dr. Mukkamala did not believe Mr. Moss sustained a neck injury on February 7, 2017.

Bruce Guberman, M.D., performed an independent medical evaluation on November 9, 2018, in which he diagnosed chronic posttraumatic right shoulder strain and contusion, head injury with persistent headaches, chronic posttraumatic cervical strain with aggravation of preexisting degenerative disc and joint disease, and right cervical radiculopathy. Dr. Guberman opined that the compensable injury aggravated preexisting cervical degenerative changes and that the

4

compensable injury caused C7 radiculitis. Dr. Guberman noted that Mr. Moss did not have significant cervical symptoms prior to the compensable injury. Dr. Guberman opined that he had reached maximum medical improvement.

The claims administrator denied a request to add cervical sprain and C7 radiculopathy to the claim on August 29, 2018. The Office of Judges affirmed the claims administrator's decisions denying the addition of C7 radiculopathy and cervical sprain and closing the claim for temporary total disability benefits in its February 4, 2019, Order. It found that Mr. Moss failed to prove by a preponderance of the evidence that he sustained a cervical sprain and C7 radiculitis in the course of and resulting from his employment. The Office of Judges noted that he reported no neck or right upper extremity symptoms following his initial treatment the day of the injury, and Mr. Moss did not seek further treatment for four months. Further, the Office of Judges determined that the symptoms that Mr. Moss reported after the compensable injury are essentially the same as those prior to the injury.

For example, the Office of Judges found that Mr. Moss underwent an MRI in November of 2010 for bilateral arm and hand numbness, and it showed significant cervical pathology, including at C7. In January of 2012, Dr. Patel noted neck and right arm pain, numbness in the right arm and fingers, and weakness in the right extremity that was present for approximately a year. In September of 2013, Dr. Whitfield noted numbness and tingling in the arms and fingers. He diagnosed history of cervical disc herniation at C6-7 and C7-T1, cervical spondylosis, and cervical radiculopathy. He opined that Mr. Moss's symptoms resulted from the cervical spine. The Office of Judges further found that on January 9, 2014, Dr. Thymius diagnosed cervical radiculitis and cervical disc herniation. A May 7, 2014, MRI was performed for right shoulder pain with numbness. Finally, on May 27, 2014, Dr. Whitfield treated Mr. Moss for right arm pain as well as numbness and tingling in the right hand. The Office of Judges noted that Dr. Patel, a neurosurgeon, opined that Mr. Moss's neck pain and radicular symptoms were the result of the compensable injury. However, the Office of Judges concluded that based on the preinjury medical records, Mr. Moss's postinjury symptoms did not significantly differ from his preinjury symptoms and were therefore unrelated to the compensable injury.

Regarding temporary total disability benefits, the Office of Judges determined that Mr. Moss's inability to work resulted from preexisting conditions. Drs. Patel and Whitfield opined that Mr. Moss was unable to work; however, their opinions were based on noncompensable conditions. Dr. Mukkamala found that he had reached maximum medical improvement for his compensable conditions in his November 8, 2017, evaluation. The Office of Judges concluded that Dr. Mukkamala's opinion was supported by the medical evidence, and it affirmed the claims administrator's closure of the claim for temporary total disability benefits. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on July 19, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Medical records prior to the compensable injury indicate that Mr. Moss suffered from essentially the same cervical symptoms and conditions that he reported

post-injury. Further, the medical records also indicate that Mr. Moss's inability to work is the result of preexisting, noncompensable conditions.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: November 6, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison